UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ELIZABETH HARDY      CIVIL ACTION NO. 20-0132

VERSUS      JUDGE DONALD E. WALTER

ROBERT L. WILKIE      MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Before the Court is a motion for summary judgment, filed by Defendant Denis McDonough[1] ("Defendant"), the Secretary of the United States Department of Veterans Affairs (the "VA"). See Record Document 32. Plaintiff Elizabeth Hardy ("Plaintiff") opposes the instant motion. See Record Document 35. For the reasons assigned below, Defendant's motion is granted.

## BACKGROUND INFORMATION

Plaintiff is a United States Army veteran who underwent sexual reassignment surgery in 1995. See Record Documents 20 at ¶ 1, 35 at 6. Plaintiff receives her medical care at the Overton Brooks VA Medical Center in Shreveport, Louisiana. See Record Document 20 at ¶ 1. Plaintiff alleges that her providers at the VA consistently include inappropriate notes pertaining to her sexual reassignment surgery in her medical records. Specifically, Plaintiff claims that the entries include: (1) redundant references to highly sensitive private information; (2) personal, non-medical opinions; and (3) offensive, inaccurate, and irrelevant information. See id. at ¶ 12; Record Document 35 at 3.

---

[1] On February 11, 2021, the Honorable Denis Richard McDonough was sworn in as the Secretary of Veterans Affairs. Accordingly, Secretary McDonough has been substituted for former Secretary Robert Wilkie. See Fed. R. Civ. P. 25(d) ("The officer's successor is automatically substituted as a party.").

On March 9, 2018, Plaintiff submitted a request to amend her medical records ("Request to Amend") which sought deletion of references to Plaintiff's sexual reassignment surgery and the word "transgender." See Record Document 32-4. In response to Plaintiff's Request to Amend, Michelle Rivera ("Rivera"), a VA Privacy Officer, sent a copy of Plaintiff's Request to Amend to each healthcare provider that had contributed to her medical records and asked whether amendment was appropriate. See Record Document 32-3 at ¶ 5.

Rivera received the providers' responses and on April 9, 2018, Rivera sent Plaintiff a letter informing her that her Request to Amend was being denied because the entries she sought to amend are medically accurate and necessary to inform providers of her medical history and anticipate her future medical needs. See Record Document 32-5. The letter also informed Plaintiff that she could appeal the decision to the VA's Office of General Counsel (the "OGC"). See id.

Between August 16, 2018, and August 27, 2018, Plaintiff sent five additional Requests to Amend seeking amendment or deletion of different portions of her medical records. See Record Document 32-2 at 3. Ultimately, the VA granted in part two Requests to Amend and denied the remainder. See id.

Plaintiff appealed each of the VA's decisions to the OGC. See id. at 4. Due to the nature of Plaintiff's appeals, the OGC sought opinions and recommendations from the VA's Lesbian, Gay, Bisexual, and Transgender + ("LGBTQ+") Health Program. See id. The director of the LGBTQ+ Health Program, Dr. Michael Kauth, Ph.D ("Dr. Kauth"), reviewed Plaintiff's appeals and submitted six recommendations to the OGC. See id. Between December 7, 2018, and June 25, 2019, the OGC issued decisions as to Plaintiff's appeals, ultimately granting in part two appeals, and denying the remaining four in their entirety. See Record Documents 32-9, 32-15, 32-21, 32-27, 32-33, 32-39.

On January 29, 2020, Plaintiff filed suit in this Court, claiming that the VA's refusal to amend her records and "stop the offending practices" of making "irrelevant and objectively offensive" entries in Plaintiff's medical records is a violation of the Privacy Act, 5 U.S.C. § 552a, *et seq.* Record Document 20 ¶¶ at 18, 19. Plaintiff requests that the Court order the VA to (1) amend her records pursuant to Section 552a(g)(2)(A); (2) pay costs and attorney's fees pursuant to Section 552a(g)(2)(B); and pay actual damages under Section 552a(g)(4)(A). Record Document 20 ¶¶ at 21, 22.

On August 5, 2020, Defendant filed a motion to dismiss for failure to state a claim, which this Court granted in part and denied in part. See Record Documents 18 and 27. The Court granted Defendant's motion as to Plaintiff's claim for actual damages; however, it denied the motion as to Plaintiff's claims for amendment of her medical records and costs and attorney's fees. See Record Document 27. On March 14, 2022, Defendant filed the instant motion for summary judgment. See Record Document 32.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. See id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002) (quoting Fed. R. Civ. P. 56(c)). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. See id. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." Total E & P USA Inc. v. Kerr-McGee Oil & Gas Corp., 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. Hamilton v. Segue Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co., 671 F.3d 512, 517 (5th Cir. 2012) (quoting Anderson, 477 U.S. at 248, 106 S. Ct. at 2510).[2]

---

[2] In this case, Defendant submits numerous exhibits, two of which are affidavits from Dr. Kauth and Tracy Knight ("Knight"), an OGC employee whose duties include processing appeals filed under the Privacy Act. See Record Documents 32-3, 32-40. Before addressing the substance of Defendant's motion, Plaintiff takes issue with the affidavits because neither have been named as fact or expert witnesses. Plaintiff argues that because the deadline to name Dr. Kauth and Knight as witnesses has lapsed, the Court should disregard their affidavits for purposes of the instant motion and bar them from testifying at trial. However, Defendant explains that Dr. Kauth and

## LAW AND ANALYSIS

The Privacy Act "safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records . . . by allowing an individual to participate in ensuring that his records are accurate and properly used." Jacobs v. Nat'l Drug Intel. Ctr., 423 F.3d 512, 515 (5th Cir. 2005) (quoting Henke v. U.S. Dep't of Com., 83 F.3d 1453, 1456 (D.C. Cir. 1996)) (internal quotations omitted). The Privacy Act provides for a cause of action for, *inter alia*, an agency's (1) failure to amend an individual's record pursuant to her request; and (2) denial of access to an individual's records. See 5 U.S.C. § 552a(g)(1)(A)-(B). While the court reviews the agency's decision *de novo*, it must not substitute its own judgment for the substantive judgment of the officials who created the record. See Hewitt v. Grabicki, 794 F.2d 1373, 1378 (9th Cir. 1986).

If the plaintiff is successful on an amendment claim, the court may "order the agency to amend the [plaintiff's] record[s] in accordance with [her] request or in such other way as the court may direct." 5 U.S.C. § 552a(g)(2)(A). The plaintiff may also recover attorney's fees and reasonable costs if she is both eligible and entitled. See 5 U.S.C. § 552a(g)(2)(B); see also Gowan v. U.S. Dept. of Air Force, 148 F.3d 1182, 1195 (1998). A plaintiff is *eligible* for fees if she has "substantially prevailed" under Section 552a(g)(1)(A). On the other hand, to determine whether a plaintiff is *entitled* to fees, the Court must consider: (1) the benefit to the public, if any, derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the government's non-compliance with the Privacy Act had a reasonable basis in the law. See id.

---

Knight are not fact or expert witnesses; rather, they merely serve to certify documents attached to Defendant's motion. Accordingly, the Court will consider their affidavits.

The Privacy Act does not allow for amendment under every circumstance, however. "[G]enerally speaking, the Privacy Act allows for correction of facts but not correction of opinions or judgments." Mueller v. Winter, 485 F.3d 1191, 1197 (D.C. Cir. 2007) (citing McCready v. Nicholson, 465 F.3d 1, 7 (D.C. Cir. 2006)) (internal quotations omitted). "The simplest test is to ask whether the allegation is that the record is inaccurate or instead that the authorized preparer of the record, although basing his judgment on accurate facts, reached the wrong conclusion . . . ." Hewitt, 794 F.2d at 1378-79. When the plaintiff fails to "attack with particularity the accuracy of the purely factual incidents related to [the agency's] comments so as to reveal a genuine dispute of fact . . . there is no demonstration of a substantial controversy regarding factual assertions or historical fact statements." Mueller v. England, 404 F.Supp.2d 51, 54-55 (D.D.C. 2005) (quoting Hewitt v. Grabicki, 794 F.2d 1373, 1379 (9th Cir. 1986)) (internal quotations omitted).

In the instant case, Plaintiff seeks amendment of the following six entries in her medical records:

1. All reference to transgender; male to female; gender reassignment surgery; gender reassignment identity surgery; sexual reassignment surgery; gender dysphoric; any reference to male pronouns.
2. Gender dysphoria F s/p reassignment; gender dysphoria female.[3]
3. 66 y/o F (s/p gender re-assignment surgery 1995).[4]
4. Gender affirming surgery on hormone replacement; Ms. Hardy is a 66 year old woman returning for follow up of gender affirming surgery on hormone replacement; she previously had gender affirming surgery in 1995 in Belgium; affirming surgery on hormone replacement.[5]

---

[3] This record originally read "gender dysphoria M-F s/p reassignment surgery; gender dysphoria male to female," but was amended on appeal. Record Document 32-15.

[4] This record originally read "66 y/o M → F (s/p gender re-assignment surgery 1995)," but was amended pursuant to Plaintiff's Request to Amend. Record Document 32-17.

[5] This record originally included the comments "gender dysphoria; returning for follow up of M-F gender dysphoria; she previously had gender appropriate surgery in 1995 in Belgium; married to two women in the past, now considers herself a 'straight female' and was married to a man but is now widowed; no facial hair growth except a few stray hairs; gender identity disorder;

  5. Gender identity dysphoria; sexual reassignment surgery.[6]
  6. Still very angry at the VA; s/p gender affirming surgery.

Record Documents 32-4, 32-10, 32-16, 32-22, 32-28, 32-34. Plaintiff acknowledges that the Privacy Act only allows for amendment of factual errors but contends that these entries constitute "factual or historical errors" and, thus, are subject to amendment under the Privacy Act. Record Document 35 at 10.

 Defendant argues that the entries Plaintiff takes issue with are not factual errors. Defendant argues that Plaintiff admitted to having sexual reassignment surgery and objects only to her healthcare providers' opinions about her medical history and their judgments as to how to document that history in her medical records. Defendant contends that because Plaintiff objects only to her providers' opinions and judgments about a fact to which Plaintiff has admitted, Plaintiff is not entitled to amendment under the Privacy Act.

 The Court agrees. The Privacy Act may be used to amend erroneous facts within Plaintiff's records, but it cannot be used to alter records that reflect an administrative decision, nor the opinions behind that decision. See Reinbold v. Evers, 187 F.3d 348, 361 (4th Cir. 1999). Here, Plaintiff does not seek to amend inaccurate facts. For instance, she does not argue that she has not undergone gender reassignment surgery (and in fact admits this). Rather, Plaintiff takes issue with her healthcare providers' opinions and judgments regarding her surgery, including their observations as to her mood towards the VA, as well as their medical judgments that she suffers from gender dysphoria. Plaintiff also objects to her providers' decision to consistently note her

---

monitoring gender-affirming hormone therapy," but was amended pursuant to Plaintiff's Request to Amend. Record Document 32-23.

[6] This record originally read "gender identity dysphoria; sexual reassignment surgery," but was amended on appeal. Record Document 32-22.

sexual reassignment surgery and their phrasing of the same. However, the Privacy Act may not be used to amend this type of information. If Plaintiff's providers determined that she suffers from gender dysphoria or that she held a particular attitude towards the VA, the VA did not err when it recorded these opinions. See id. The same logic applies to the providers' decisions about what medical history was pertinent to include in Plaintiff's records, and the most effective way to phrase that history. This is not to say that the providers' decisions were ultimately correct. However, while their opinions and judgments "may be subject to debate, . . . they are not subject to alteration under the Privacy Act as long as the opinions are recorded accurately."[7] Id. (citing Douglas v. Agric. Stabilization & Conservation Serv., 33 F.3d 784, 785 (7th Cir. 1994)).[8]

Nor is Plaintiff entitled to fees and costs. To recover fees and costs under the Privacy Act, the plaintiff must "substantially prevail." 5 U.S.C. 552a(g)(2)(B); Gowan, 148 F.3d at 1195. In the context of an amendment case, the plaintiff substantially prevails if the agency's motivation for amendment is motivated by a Privacy Act lawsuit. See Gowan, 148 F.3d at 1195 (explaining that in an amendment case, the plaintiff is eligible for a fee award when the amendments were motivated by the lawsuit). However, in this case, the VA made amendments to Plaintiff's records in 2018 and 2019, and Plaintiff did not file her lawsuit until January 2020. See Record Documents

---

[7] Plaintiff argues that the record is incomplete because it does not include the responses the providers gave in response to Plaintiff's Requests to Amend. However, as explained *supra*, Plaintiff seeks to amend opinions and judgments, which may only be amended if they are incorrectly recorded. The decision letters sent in response to Plaintiff's Requests to Amend do not, in every instance, include the exact language of her providers' recommendations. However, they all note that the entries are accurate. Thus, the record sufficiently shows that Plaintiff's medical records accurately reflect her providers' opinions and judgments.

[8] Plaintiff's opposition brief also includes suggestions that the VA violated the Privacy Act by failing to comply with its own policies and procedures and through the unauthorized disclosure of Plaintiff's medical history. However, the Court dismissed these claims on April 30, 2021, in response to Defendant's motion to dismiss. See Record Document 27. Accordingly, the Court will not address these arguments again.

1, 15, 17, 22, 23. There is nothing to suggest that a lawsuit that did not yet exist motivated the VA to amend Plaintiff's medical records. Thus, the Court finds that Plaintiff is not eligible for attorney's fees and reasonable costs under the Privacy Act.[9]

## CONCLUSION

Based on the foregoing, there is no issue of genuine material fact, and Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's motion for summary judgment (Record Document 32) is hereby **GRANTED**. A judgment consistent with this ruling shall issue forthwith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 20th day of May, 2022.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

---

[9] As eligibility is a prerequisite for recovering costs and fees, the Court need not determine if Plaintiff would have been entitled to costs and fees.